United States District Court
Southern District of Texas
**ENTERED**
September 11, 2019
David J. Bradley, Clerk

United States District Court
Southern District Of Texas
FILED

SEP 11 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| DUSTIN MILLER, *et al.* | § |
| | § |
| Plaintiffs, | § CIVIL ACTION NO. 7:18-CV-00041 |
| VS. | § |
| | § |
| BRAVURA INFORMATION | § |
| TECHNOLOGY SYSTEMS, INC., *et al.* | § |
| | § |
| Defendants. | § |

## ORDER ON SETTLEMENT AGREEMENTS

Pending before the Court is the Second Renewed Joint Motion for Approval of Settlement Agreements as Amended. (Dkt. No. 88).

The parties represent that after litigation costs, incentive awards, and settlement administration costs are deducted from the settlement fund, the settlement fund will have a remaining amount of $1,476,549.80. (Dkt. No. 86 at 2). Plaintiffs' counsel requests up to, but no more than, 40% of this amount as the attorneys' fee award, which is equivalent to approximately $590,619.92.

The parties filed a renewed motion for settlement, which was denied on August 16, 2019. On August 22, 2019, a status conference was held before the undersigned. The parties agreed to remove the general release clause from the settlement agreements. Counsel for the Plaintiffs have supplemented the record with information in support of their attorneys' fees request.

As part of the first motion for settlement, denied on March 18, 2019, Plaintiffs' counsel attached two declarations, one from attorney Peter R. Rosenzweig and one from attorney Lance C. Arney. Counsel re-urges those declarations for the Court's consideration. Counsel additionally

re-urges the Court to reconsider the consent forms, representation agreements, and declarations of the named Plaintiffs.

## I. ATTORNEYS' FEES

### A. Percentage Award

The Court initially rejected a 40% fee award. As explained in the Court's previous order, fee requests above 33.3% are commonly rejected, barring a demonstration of unusual circumstances or affirmative justifications. *See, e.g., Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) ("[A]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund. . . . fee requests that fall between 26.8% and 36% percent should be considered potentially reasonable, provided there is some affirmative justification for the figure.") (citing *Manual for Complex Litigation* § 14.121 (2010)); *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *7 (N.D. Tex. July 1, 2015) (describing fee awards of 30% and above as "on the high end," but potentially reasonable). A 40% fee is markedly above the customary range. *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *5 (W.D. Tex. Feb. 29, 2016) ("[T]he only factor addressed in the parties' joint motion is their assertion that the 40% contingent fee is 'within the normal range' and thus customary. The Court has addressed, and rejected, that assertion above."). Courts "must carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class," and it is the "independent duty" of the court "to review the fee request in the interests of protecting the class." *Klein*, 705 F. Supp. 2d at 673.

"The Fifth Circuit has never explicitly endorsed the percentage method for common fund cases, and we are the only circuit yet to do so. Still, the Fifth Circuit has been amenable to [the percentage method], so long as the *Johnson* framework is utilized to ensure that the fee awarded

is reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) (internal quotations omitted); *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *4 (N.D. Tex. July 1, 2015) ("To account for the Fifth Circuit's preference for a *Johnson*-based analysis, many district courts have adopted a hybrid analysis which employs a percentage method cross checked by the twelve [*Johnson*] factors . . . ."); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007). "The 'blended' method, sometimes referred to as the 'hybrid' method, uses the percentage method to establish a benchmark fee and then checks this amount against a reasonableness test based on consideration of the *Johnson* factors." *Klein*, 705 F. Supp. 2d at 674. A benchmark fee of 30% is appropriate. *See Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *5 (W.D. Tex. Feb. 29, 2016) (Fifth Circuit precedent suggests a benchmark fee of 30% is more appropriate contrasted with the parties' proffered 40%); *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *4 (E.D. Tex. Oct. 14, 2016) ("Texas courts have held that a fee of thirty percent is reasonable in a FLSA collective action.").

The twelve *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) the fee arrangement, including whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Counsel has supplied better substantiated considerations that can justify an elevated fee award. The Court will more thoroughly address these considerations below as part of a hybrid analysis.

B.     **Lodestar Cross Check**

The lodestar fee is first calculated by multiplying the "number of hours reasonably expended" on litigation by "the prevailing hourly rate in the community for similar work." *See Combs v. City of Huntington*, 829 F.3d 388, 391-92 (5th Cir. 2016). Plaintiffs' counsel has submitted documentation to support a total of $235,399.75 in attorneys' fees. (Dkt. No. 67-1). When the lodestar method is being used to cross check, the court "need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient . . . ." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 (E.D. La. 2007). The Court then reviews the lodestar fee in light of the *Johnson* factors. *Combs*, 829 F.3d at 391-92.

Counsel's own estimate of attorneys' fees ($235,399.75) represents roughly 15% of the total settlement amount. The requested lodestar multiplier is 2.5 ($590,619.92 / $235,399.75).[1]

Plaintiffs' counsel argues that when a multiplier falls between 2 and 4.5, it "confirms" that the requested fee is reasonable.[2] (Dkt. No. 87 at 8-9).

---

[1] The parties represent that after litigation costs, incentive awards, and settlement administration costs are deducted from the settlement fund, the settlement fund will have a remaining amount of $1,476,549.80. (Dkt. No. 86 at 2). Plaintiffs' counsel requests up to, but no more than, 40% of this amount as the attorneys' fee award, which is equivalent to approximately $590,619.92. The $235,399.75 estimate was provided in a sworn affidavit with supporting documentation on July 17, 2019. The Court notes that in counsel's most recent filing, counsel states that the lodestar amount is now $311,141—an unexplained increase of $75,741.20—and that the lodestar multiplier is only 1.896. (Dkt. No. 87 at 9).

[2] Counsel's cited cases do not support that a straightforward comparison of the requested multiplier to the range of common multipliers is the extent of a lodestar cross check. Counsel's quoted language appears to stem from *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013). The district court in that case stated that courts "have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee . . . but a fee resulting in such a high relative multiplier is unreasonable in light of the lesser complexity and risk of this action." *Id*. As such, even in *Singleton*, the fact that the requested multiplier of 3.8 fell between 2 and 4.5 did not "confirm" its reasonableness.

A lodestar multiplier is a function of the twelve *Johnson* factors. The *Johnson* factors "are applicable to deciding whether the lodestar is reasonable, as well as to adjusting that award by a multiplier once the lodestar is calculated." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008) ("To enhance a lodestar, the court 'must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.' "); *Combs*, 829 F.3d at 392 (5th Cir. 2016) ("[T]he court may enhance or decrease [the lodestar] based on the twelve *Johnson* factors."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) (internal quotations omitted) ("Even when used as a cross-check, courts should explain how the application of a multiplier is justified by the facts of a particular case."). Thus, the Court invited the parties to submit information that would justify an increased fee award.

Counsel's supplemental memorandum contains information relevant to some of the *Johnson* factors, which the Court can use to evaluate the requested multiplier as well as the percentage award. At counsel's request, the Court will also reconsider any relevant information included in Mr. Rosenzweig's and Mr. Arney's first declarations.

**C.    Hybrid Analysis of *Johnson* Factors**

   1.    *The Amount Involved and the Results Obtained*

The Fifth Circuit has held that "the most critical factor in determining an attorney's fee award is the degree of success obtained." *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013). Counsel's supplemental memorandum provides information to support that the result obtained in this case was "exceptional." (Dkt. No. 87 at 5-7). Counsel explains that a "particular contested issue" was the method by which overtime compensation would be calculated. (*Id.*). Plaintiffs maintained that the standard method of calculating overtime pay under the FLSA should

be used, while Defendants maintained that the Fluctuating Workweek method should be used. (*Id.*). Under Plaintiffs' method, the overtime pay totaled $1,500,000, while under the Defendants' method, the overtime pay totaled $310,000. (*Id.*). Counsel clarifies that, even accounting for a 40% attorneys' fee, the individual Plaintiffs will receive three times the amount they would have if the settlement agreement had used the Fluctuating Workweek method to calculate the overtime awards. (*Id.*). This information supports that Plaintiffs' counsel obtained a favorable settlement for their clients.

### 2. *Nature and Length of the Professional Relationship*

Counsel explains that the professional relationship with the named Plaintiffs commenced in 2017, "long before he was engaged as counsel for this case." (Dkt. No. 87 at 3). Mr. Rosenzweig represented the named Plaintiffs and other class members in two other FLSA collective action cases against Technology and Supply Management, LLC, the predecessor to Bravura Information Technology Systems, Inc. (*Id.* at 3-4). Those cases were voluntarily dismissed in 2018 and did not result in any recovery. (*Id.*).

Plaintiffs approached Mr. Rosenzweig with their claims related to Bravura's overtime pay practices because of their previous relationship. (*Id.*). Generally, a lengthier attorney-client relationship supports a higher fee. The previous relationship between the Plaintiffs and Mr. Rosenzweig is a consideration that supports a higher fee.

### 3. *Complexity of the Case*

In Mr. Rosenzweig's first declaration, counsel argued that the case was complex because counsel was required to review 1,200 pages of timesheets and other records and because the parties had "many rounds of exchanging their respective calculations of the overtime hours worked and

back wages." (Dkt. No. 36-6 at 7). The Court does not find that this is a highly unusual circumstance for an overtime pay collective action case.

    4.    *Preclusion of Other Employment*

In Mr. Rosenzweig's first declaration, he states that "[a]ny time a case of this magnitude and complexity is accepted (by smaller firms with a limited number of attorneys), it is understood that the resources necessary to prosecute it will preclude employment on other cases." (Dkt. No. 36-6 at 9). While counsel does not claim that he passed on other, more lucrative legal work, it is suggested that this case *could have* precluded other employment. At best, this factor is neutral. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1084 (S.D. Tex. 2012) (counsel's statement that "[t]ime devoted to this litigation and its resolution necessarily limited the time available for other litigation" was logically true, but incomplete).

    5.    *Fee Arrangement*

Counsel emphasizes that the clients agreed to a 40% contingency fee.[3] Additionally, counsel contends that the firm "would not have been able to accept this engagement if a 40% contingency fee was not agreed to." (Dkt. No. 87 at 4). "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable."). The "attorney's private fee arrangement" is one factor of many and is "not dispositive" but may "aid in determining reasonableness." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). As counsel notes, the contingency fee is typically

---

[3] Counsel argued that an above-average fee was merited because, due to working on a contingency fee basis, the firm has borne "100% of the risk of loss, advanced costs, which if they were not able to make any recovery, would have been lost." (Dkt. No. 36-7 at 4; Dkt. No. 36-6 at 9).

greater than that earned in a fixed fee agreement, to compensate for the risk that there may be no recovery at all.

      6.    *Customary Fee*

The next applicable *Johnson* factor is the customary fee for similar cases in the relevant community.[4] As already expressed, the customary fee in FLSA common fund cases is roughly 25% to 33%. This customary range remains true for the Southern District of Texas. *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *4 (S.D. Tex. Jan. 31, 2018) (finding 30% is a customary fee for FLSA cases); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1080-82 (S.D. Tex. 2012)

      7.    *Awards in Similar Cases*

Counsel argues that the 40% fee is reasonable, as demonstrated by the fees awarded in other FLSA cases Mr. Rosenzweig has been lead counsel on. Concerning to the Court is the fact that the vast majority of the cases provided as examples involved a very common, reasonable 33.3% fee. (*See* Dkt. No. 36-6 at 3-4). These cases support that the requested 40% is curiously high.

Counsel first identified two cases in which the firm received a fee higher than 33.3%. In the supplemental memorandum filed on August 27, 2019, counsel identified two more cases in which a higher fee award was granted. The Court is forced to remark that none of the orders granting approval of the settlement contain analysis of the attorneys' fees award. Thus, the undersigned is not privy to the reasoning which allowed an elevated fee in those cases.[5]

---

[4] The relevant community is the community in which the court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

[5] In the first two cases, the Court was able to determine from the motions for attorneys' fees that the lodestar amount was much closer to the percentage equivalent than it is in this case. Notably, in one such case, *Davis v. Neany, Inc.*, the court awarded $78,296.40 in attorney's fees, which was roughly equivalent to a 38% fee award. *See* Order, *Davis v. Neany, Inc.*, No. 8:17-cv-1862-TDC (D. Md. Dec. 21, 2017). In that

8 / 16

Counsel also explains that while the majority of Mr. Rosenzweig's cases involved a fee award of 33.3%, in 2016 the firm decided to raise their contingency fee from 33.3% to 40%. The undersigned takes note that the firm decided to raise prices in 2016. Overall, however, the undersigned must find that the awards granted in similar cases, including counsel's own cases, have been closer to the customary fee range.

While the work done as part of discovery and negotiations is not to be discounted, this case was settled earlier on and complex motion practice was avoided. This case is more akin to cases like *Shaw v. CAS, Inc.*, in which "litigation never proceeded beyond the preliminary stages," "no formal document or deposition discovery took place," and "no substantial motion practice was completed." No. 5:17-CV-142, 2018 WL 3621050, at *4 (S.D. Tex. Jan. 31, 2018). The Court recognized that counsel entered into a fee agreement under which they were to be paid 40%, but found that the *Johnson* factors warranted a more typical 30% fee award. *Id.*

The Court also finds *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551 (N.D. Tex. Nov. 12, 2014), comparable.[6] In that case, the fact that counsel was able to bring about an earlier settlement was favorable because it avoided drawn-out litigation; on the other hand, the case was also not so "extraordinarily complex so as to justify a recovery of 40%." 2014 WL 7332551 at *7-9. The court contrasted the case against *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997), which allowed a 36% fee award "because the case was extraordinarily complex with multi-district action that had lasted 11 years with roughly 160 complaints filed, 1140 answers, 1922 motions, with almost 1000 memoranda in support of or in opposition of these motions, 285

---

case, the attorneys represented that the lodestar fee was $67,910. *See* Plaintiffs' Uncontested Motion for Approval of Attorneys' Fees and Reimbursement of Litigation Costs at 12, *Davis v. Neany, Inc.*, No. 8:17-cv-1862-TDC (D. Md. Dec. 13, 2017).

[6] The Magistrate Judge recommended a 30% fee award; the District Court found that a small upward adjustment from the 30% benchmark was warranted, awarding 33.33%. *See Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7336889, at *3 (N.D. Tex. Dec. 24, 2014).

depositions . . . 90 hearings, at least one oral argument per month . . . and endless numbers of settlement conferences." *Id.*

To further demonstrate the dissimilarity between the instant case and cases in which a 40% fee award is merited, the undersigned also takes note of *Vassallo v. Goodman Networks, Inc.*, a case in which the attorneys requested a fee award of $795,656.21, or 39.78%, which was *less* than the lodestar amount of $803,025.31. No. 15CV97-LG-CMC, 2016 WL 6037847, at *4–6 (E.D. Tex. Oct. 14, 2016). Naturally, the court found the requested fee award of $795,656.21 to be reasonable.

The remaining *Johnson* factors are not at issue, or they are neutral.

The Court finds that some factors, namely the degree of success obtained for the Plaintiffs and the contingency fee agreement, support an upward adjustment from the 30% benchmark. On the other hand, this case is not so highly complex that it merits an attorneys' fees award of 40%. The Court finds that a 35% fee is reasonable. This results in a fee of approximately $516,792.43.

## II. SETTLEMENT CLAIMS PROCESS

At the last status conference, held August 29, 2019, an additional issue was brought to the Court's attention.

The second-amended settlement agreements provide that the Settlement Administrator will execute the settlement claims process by mailing out the notices of settlement. Plaintiff class members will be required to return the proposed claim forms to the Settlement Administrator within fourteen days of the notices and forms being mailed. Notably, the settlement notices explicitly state that "any member of the Plaintiff Class who does not submit a timely and complete Claim Form will not receive a share of the monetary recovery provided by the Settlement but will retain the right to bring a separate lawsuit against the Defendants;" however, the settlement

agreements themselves contain no written provision explicitly addressing the failure to return a claim form. During the last status conference, the parties were unable to satisfactorily explain the necessity of this second round of notices and forms. The parties stated to the Court that any opt-in Plaintiff who fails to submit a claim form would forfeit their claims and their portion of the settlement.

The Court believes that it is more than problematic that an opt-in Plaintiff would be deemed to forfeit their claims and settlement share by simply failing to return a second form. A second form might not be returned for any number of reasons, including neglect or mere oversight. Given the parties' responses at the status conference, the parties seem to believe that the "consent to join" forms already filed by the opt-in Plaintiffs carry no real legal significance, and that the "settlement claim forms" are necessary to successfully bind the opt-in Plaintiffs to the settlement. In truth, it is the other way around. If the Court were to approve the settlement agreements today and enter final judgement, all Plaintiffs, named and opt-in alike, would be bound.

By including this type of forfeiture as part of the settlement process, the Court is concerned that the parties do not appreciate the significance of the already filed written consents. As explained previously, FLSA actions are "opt-in" actions. The opt-in Plaintiffs are on equal footing with the named Plaintiffs by virtue of filing a written consent to join the action. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915-17 (5th Cir. 2008); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011); *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003); *Granchelli v. P & A Interests, Ltd.*, No. H–11–4514, 2013 WL 435942, at *1 n. 1 (S.D. Tex. Feb. 4, 2013); *Alvarado v. Wang Ma LLC*, No. 13-CV-944-DAE, 2015 WL 919818, at *2 (W.D. Tex. Mar. 3, 2015). These individuals have joined the collective action, consenting in writing (1) to pursue their claims in connection with the instant lawsuit, giving up their individual claims, (2) to

be bound by the judgment of this Court, and (3) to be bound by any settlement of the lawsuit. Consequently, since there has been no decertification of the collective action and the Court has not dismissed any of the opt-in Plaintiffs' claims,[7] the opt-in Plaintiffs *will* be bound by the judgment of this Court and the settlement agreement in this case.

The parties may, essentially, wish to have a time period in which the opt-in Plaintiffs can reconsider their decision to join the collective action and decide whether to retain their individual claims. If so, the Court believes that the better approach would be to require an opt-in Plaintiff to execute a written document within the proposed fourteen-day period, if that person desires to withdraw their consent and voluntarily dismiss their claims. Under this approach, class counsel must file any executed withdrawal/motion for voluntary dismissal with the Court so that the Court can enter an order dismissing the opt-in Plaintiff's claims pursuant to Rule 41 of the Federal Rules of Civil Procedure. *See Reyes v. Texas EZPAWN, L.P.*, No. CIV. A. V-03-128, 2006 WL 3513936, at *1 (S.D. Tex. Dec. 6, 2006) ("Contrary to Plaintiff's belief, simply withdrawing the consent forms of opt-in plaintiffs does not automatically dismiss their claims without an order of this Court."); *Blackwood v. Hendrix Health Care Ctr., Inc.*, No. 6:12-CV-02836-MHH, 2013 WL 6583966, at *3 (N.D. Ala. Dec. 16, 2013) ("The few opinions that address an FLSA opt-in plaintiff's motion to withdraw make clear that FLSA plaintiffs may neither casually invoke the opt-in mechanism nor subsequently remove themselves from an FLSA action without seeking leave of court.").[8]

---

[7] The second stage or "decertification" stage occurs after discovery is complete and is triggered by the defendant's motion for decertification. *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 466 (S.D. Tex. 2012). If the opt-in class members are not similarly situated, the court dismisses the opt-in Plaintiffs' claims without prejudice. *Id.*

[8] "The FLSA does not provide a method whereby an opt-in plaintiff may unilaterally withdraw once they have joined the litigation . . . opt-in plaintiffs [referred to in the FLSA as party plaintiffs] should have the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Mancuso v. Fla. Metro. Univ., Inc.*, No. 09-61984-CIV, 2010 WL 11549395, at *1 (S.D. Fla. Sept. 17, 2010) (citing *Prickett v.*

For these reasons, the Court is willing to approve the settlement agreements with the following modifications.[9]

The Court will withhold from approving the settlement agreements for an additional fourteen days so that class counsel may communicate with their clients regarding the settlement and file any necessary motions for voluntary dismissal. The Court suggests that the better approach is to provide a withdrawal of consent/motion for voluntary dismissal form to the Plaintiffs, in lieu of a claim form; however, court approval of a withdrawal form is not required. If class counsel still wishes to have their clients sign additional paperwork acknowledging the settlement terms before receiving their Overtime Awards, they are advised that such paperwork would not have any effect on the legitimacy of the opt-in Plaintiffs' status in this suit.

If class counsel determines that any of their clients wish to withdraw from the litigation before the Court approves the settlement, class counsel must file a voluntary dismissal motion with this Court so that the Court may enter an order dismissing the Plaintiff's claims. Any Plaintiff who executed a written consent to join this collective action can only retain their individual claims if the Court enters an order dismissing them from the case pursuant to Rule 41.

Most importantly, at the appropriate time, the Settlement Administrator shall disperse Overtime Awards to all Plaintiffs (named and opt-in) except those who withdraw their consent to join the collective action. With respect to the Overtime Awards of Plaintiffs who have withdrawn their consent, consistent with the settlement agreements, the Settlement Administrator may disperse the excess funds among the other Plaintiffs *pro rata*.

---

*DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (agreeing that opt-in Plaintiff's claims could only be dismissed pursuant to Rule 41(a)(2)).

[9] "District courts retain significant discretion to manage collective action cases in a manner that promotes justice and judicial economy." *Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2016 WL 6650860, at *6 (N.D. Tex. Nov. 9, 2016).

If the parties are amenable to these conditions, the parties shall submit a notice to the Court indicating their acceptance within **7 days** of this Order.[10]

### III. NOTICES AND FORMS

For the reasons discussed in the previous section, the proposed claim forms are **REJECTED**.

The settlement notices contain misleading information. For example, the notices state that "any member of the Plaintiff Class who does not submit a timely and complete Claim Form will not receive a share of the monetary recovery provided by the Settlement but will retain the right to bring a separate lawsuit against the Defendants." (Dkt. No. 88-3 at 5). Having already submitted their written consents to join the collective action, the opt-in Plaintiffs *will* be bound by the judgment of this Court and the settlement in this case. The Plaintiffs can only retain their individual claims if the Court enters an order granting voluntary dismissal of their claims pursuant to Rule 41.

The current proposed settlement notices are **REJECTED**.

---

[10] Should the parties respond with a satisfactory reason as to why a second round of notice and consent forms is required, then the Court believes it is appropriate to point out that the settlement agreements provide that "a [class member] who wishes to join in the settlement will be required to execute and provide a Claim Form to the Settlement Administrator prior to the Claims Deadline." (Dkt. No. 88-1 at 8-9; Dkt. No. 88-2 at 8). The settlement notices and claim forms instruct the Plaintiffs to return the forms to "class counsel" and provide Mr. Peter Rosenzweig's contact information. (*See* Dkt. No. 88-3 at 5; Dkt. No. 88-5 at 5; Dkt. No. 88-4 at 2; Dkt. No. 88-6 at 2). To the undersigned's knowledge, class counsel is not the Settlement Administrator. No instructions are provided as to how to submit the forms to RG2 Claims Administration, LLC.

## IV. CONCLUSIONS

### A. FINDINGS

The Court awards **$2,271.25** in litigation costs. The Court awards a **35%** attorneys' fees award. After litigation costs, settlement administrator fees, and incentive awards are deducted from the settlement fund, Plaintiffs' counsel will be awarded **35%** of the fund in attorneys' fees.

Being jointly approved by the parties, RG2 Claims Administration, LLC is **APPOINTED** as the settlement administrator.

The settlement notices (Dkt. Nos. 88-3, 88-5) are **REJECTED**. The claim forms (Dkt. No. 88-4, 88-6) are **REJECTED**.

### B. MODIFICATIONS

The Court is willing to approve the settlement agreements (Dkt. Nos. 88-1, 88-2) with the following modifications:

(1) The Court will withhold from approving the settlement agreements for an additional fourteen days so that class counsel may communicate with their clients regarding the settlement to determine if any Plaintiff wishes to withdraw their consent and voluntarily dismiss their claims.

(2) Class counsel shall file any motions for voluntary dismissal with this Court.

(3) The parties shall file a notice with the Court indicating whether they accept the modifications; this will begin the fourteen-day period. After the fourteen-day period has passed, the Court will address any filed motions for voluntary dismissal.

(4) At the appropriate time, the Settlement Administrator shall disperse the Overtime Awards to all named Plaintiffs and opt-in Plaintiffs, except those who have withdrawn their consent to join the collective action. With respect to the Overtime Awards of Plaintiffs who have withdrawn their consent, consistent with the settlement agreements, the Settlement Administrator may disperse the excess funds among the other Plaintiffs *pro rata*.

If the parties are amenable to these modifications, the parties shall submit a notice with the Court indicating their acceptance within **7 days** of this Order.

The Clerk of this Court shall forward a copy of this document to the parties and to RG2 Claims Administration, LLC by any receipted means.

It is so **ORDERED**.

DONE this 11th day of September, 2019, at McAllen, Texas.

_____
J. SCOTT HACKER
United States Magistrate Judge